

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00107-CR

**DAVID RAY BRATCHER,**

Appellant

v.

**THE STATE OF TEXAS,**

Appellee

**From the 278th District Court
Madison County, Texas
Trial Court No. 07-11167-278-06**

## MEMORANDUM OPINION

A jury found David Bratcher guilty of aggravated robbery and assessed a forty-year prison sentence and a $5,000 fine. Bratcher raises one issue in this appeal—the trial court abused its discretion in denying his motion for mistrial. We will affirm.

The evidence shows that the complainant, Mike Woycheshin, approached a stopped green car at a highway intersection and noticed a man lying on the ground, appearing to be injured, and a woman in the green car's driver's seat. Woycheshin stopped and rolled his window down about six inches. The man, whom Woycheshin

identified at trial as Bratcher, jumped up, pointed a handgun at Woycheshin through his open window, and told him to get out of his car. Woycheshin sped off, called the police, and went home to enlist relatives and a friend to find Bratcher and the green car.

Woycheshin returned to the vicinity in his car, followed by his stepson Ronnie Standley, and they found the green car and pursued it. Standley followed it, and it drove into a pasture. The police arrived and went down into the pasture to look for the green car's occupants. Standley, who was armed, had a hunch where they might come out of the pasture on Highway 90, so he drove around to that location and found the occupants, who were trying to flag down cars. They flagged down Standley, who stopped, got out with his weapon, and told them to get down. Standley, who also identified Bratcher at trial, held them at gunpoint until the police arrived about ten minutes later. The woman who was with Bratcher testified as an accomplice-witness and corroborated Woycheshin's and Standley's testimony.

Bratcher's issue on appeal arises out of the following occurrence during Woycheshin's direct examination by the State:

Q.    Now, when you say you were searching the area, who all was searching?

A.    We had Steven and Ronnie. We had the cell phones that was in communication with the police department as things went on.

Q.    And why did you decide to conduct a search on your own instead of waiting for law enforcement?

A.    Well, there is several factors involved in that. The man was a fugitive from Houston, Texas, that we knew, and he was wanted for murder.

[DEFENSE COUNSEL]: Non-responsive, I object.

THE COURT: Sustained.

[DEFENSE COUNSEL]: And ask the Court to instruct the jury to disregard.

THE COURT: I instruct the jury to disregard the last comment.

[DEFENSE COUNSEL]: And Judge, I ask for a mistrial.

THE COURT: Denied.

The denial of a motion for mistrial, which is appropriate for "highly prejudicial and incurable errors," is reviewed under an abuse-of-discretion standard. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see also Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Thus, the appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a tailored version of the test originally set out in *Mosley v. State*, 983 S.W.2d 249, 259-60 (Tex. Crim. App. 1998). *See Hawkins*, 135 S.W.3d at 77. "[T]he *Mosley* factors should be used to evaluate whether the trial court abused its discretion in denying a mistrial for

improper argument . . . ." *Id.* Those factors are: (1) the prejudicial effect, (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Id.*; *see Mosley*, 983 S.W.2d at 259.

Applying the *Mosley* factors, we conclude that any prejudicial impact of the witness's non-responsive and unsolicited comment was not so severe that it was not cured by the trial court's immediate instruction to disregard the comment. Further, the jury was presented with strong evidence of guilt. Finally, in closing argument, the State disavowed the comment, stating:

> And when Mr. Woycheshin was testifying he made a comment about the defendant being wanted for some things that—out of Houston. I want to tell you that those comments are not accurate. The word murder was mentioned. To my knowledge the defendant has never been charged with murder and never committed a murder and never been wanted for murder. So the Judge has asked you or instructed you to disregard that part of Mr. Woycheshin's testimony. I'm asking you to do the same thing. It was not accurate testimony. It didn't mean anything, forget it and consider just the facts in this case.

Under these circumstances, we cannot say that the trial court erred in failing to grant a mistrial. Bratcher's sole issue is overruled, and we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray concurs in the result to the extent it affirms the trial court's judgment. A separate opinion will not issue. He notes, however, that the closing argument set out in the opinion has nothing to do with the error analysis but

would go to a harm analysis.  While he concurs that the trial court did not err in refusing a mistrial, he also notes, alternatively that any error would be harmless in light of the State's closing argument.)

Affirmed

Opinion delivered and filed December 9, 2009

Do not publish

[CRPM]